# Arbuckle Brothers, *et al. v.* Columbia Grocery Co. *et al.*

## *Creditor's Bill.*

(Decided April 20, 1907.   43 So. Rep. 781.)

1.   *Creditor's Bill; Evidence; Sufficiency.*—The evidence in this case examined and held insufficient to show that money loaned to the corporation and invested in land by an officer thereof in his own name, was paid to the officer on account of an indebtedness due him by the corporation.

2.   *Same; Property Which May be Subjected.*—When an officer of the corporation invests the corporate funds in lands taking title for himself creditors of the corporation may pursue the funds just as the ocrporation itself could have done.

APPEAL from Henry Chancery Court.

Heard before the Hon. W. L. PARKS.

Creditors' bill by Arbuckle Bros., and others against the Columbia Grocery Company and another.   From a decree for defendants, complainants appeal.   Reversed, rendered, and remanded.

B. F. REID, for appellant.—Complainants had the right to subject the land purchased with money belonging to defendant.—Section 818, Code 1896; *Dickerson,*

et. al. v. National Bank, 98 Ala. 546. The right exists whether the grocery company was solvent or insolvent at the time of the unauthorized transfer.—O'Neill v. Birmingham Brewing Co., 101 Ala. 390; Dixon v. Mc-Larney, 97 Ala. 383; McLaren v. Anderson, 109 Ala. 571. Complainant's debt was in existence at the time of the transaction and the burden was on defendant.—Wooten v. Steele, 109 Ala. 562; Halsey v. Connell, et al., 111 Ala. 221; Sec. 818, Code 1896, and authorities cited therein.

A. E. PACE, for appellee.—No brief came to the Reporter.

SIMPSON, J.—This was a bill filed by the appellant against the appellees; the gravamen of its allegations being that said Columbia Grocery Company was indebted to complainants; that while said debts were outstanding the defendant R. M. Davis, who was the president of said corporation, managing its business, appropriated certain funds of the corporation to his own use by investing the same in lands now held by him; that said corporation has ceased to do business, and is without other assets to pay the debts of complainants; that, in addition to the money of the said corporation (about $1,500) used in the purchase of said lands, the remainder of the purchase money (about $300) is still due to the vendor R. S. Mays. The prayer of the bill is that said land be sold and the proceeds applied first, to the amount found to be due due to said Mays; second, to the payment of costs and attorney's fees; and, third, that the residue be applied to the payment of the claims of complainants and of any other creditors who may come in. A discovery is also prayed that the said Davis be required to discover any other assets which have been concealed by him, and that a receiver be appointed to take charge of said lands, etc.

The proof on the part of the complainant is, by the witness Campbell, owner of the Manufacturers' Bank, that on January 31, 1901, said bank "loaned to said Columbia Grocery Company, through its president, R. M.

Davis, $1,232.86," which was placed immediately to the credit of said Davis, and on February 1, 1901, said money, with other moneys which had been previously to the credit of said Davis, amounting in the aggregate to $1,600, was paid to R. S. Mays on check drawn by R. M. Davis to pay for land known as the "Thomas Place"; that the account of said Columbia Grocery Company was subsequently settled by merchandise. He also stated, on cross-examination, that Davis told him, at the time of the loan, the purpose for which he wished to use the money, and that he did not understand it was to pay any indebtedness of said company to Davis. R. S. Mays testified to selling the land known as the "Thomas Place" to said Davis, and that two-thirds of the purchase money was paid by the check. Said respondent R. M. Davis does not dispute the facts stated by Campbell, but states that the money which he borrowed from the bank for the company, and placed to his own credit, was in payment of that amount due him on account of loans he had made to the company in the payment of two of the company's debts. He states, also, that he was discharged in bankruptcy in 1899; that on the 26th of April, 1900, he bought 50 shares of the stock of said company, paying therefor $2,500, and subsequently bought 40 shares, for which he paid "$200 par value" (probably this should be $2,000); that his salary, up to March 10, 1901, was $50 per month, and from that time till July 10, 1902, $100 per month; that on September 1, 1900, he loaned the company $700, and a few days afterwards $455.80 to take up a bill of lading in the bank of Dothan; that the assets of the company, when he took charge, amounted to $10,358.18; that his sole object in taking charge of the affairs of the corporation was to wind up the affairs and pay off creditors as far as the assets would go. The checks of the company had been protested when he went into it. He attaches a statement showing the amount paid out to creditors, $6,754.-33, and accounts still on the books (July, 1902) $3,970.-84. This was at the time the business was closed. He also attaches a statement of his own account, consisting

of various items of merchandise and cash, crediting himself with the loans and his salary, and shows a balance in his favor of $458.74. ·

As to the question of indebtedness vel non of the corporation to the complainants, we do not think the circumstantial testimony of the complainants as to the amounts due is to be overcome by the general denial by the said defendant Davis, and in fact he does not make any specific denial. The clear testimony of a disinterested witness shows that the corporation, by said Davis, borrowed money, which was immediately taken by Davis and invested in the land. Hence we consider that the complainants are creditors of said corporation. Occupying the fiduciary position which he did, we think that the burden rested on him to show by clear evidence that he had a right to appropriate said funds to his own use, and we do not think that his own unsupported statement is sufficient to establish the fact that said money was taken in payment of a debt due him. The funds held by said Davis in his fiduciary capacity of president and manager having been invested in the land, the trust fund may be pursued and subjected to the payment of the debts of the corporation.—*Whaley v. Whaley*, 71 Ala. 159; *Griswold v. Griswold*, 111 Ala. 572, 578, 20 South. 437. The creditors have the same right to pursue the trust fund which the corporation itself would have.—*Vaughn, et al. v. Ala. Nat. Bank*, 143 Ala. 572, 577, 578, 42 South. 64, and cases cited; 6 Pom. Eq. Jur. p. 1419, § 879.

The decree of the court is reversed, and a decree will here be rendered ordering the sale of the land described in the bill, and the appropriation of the proceeds in accordance with the prayer of the bill: The chancery court of Henry county will make such further orders as may be necessary in the distribution of the fund and in the confirmation of the sale.

Reversed, rendered, and remanded. .

TYSON, C. J., and HARALSON and DENSON, JJ., concur.