ARLINGTON TRUST COMPANY *vs.* SAMUEL B. LE VINE.

Suffolk.     May 15, 1935. — June 25, 1935.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Attachment,* Dissolution.     *Trustee Process.*

G. L. (Ter. Ed.) c. 223, § 125, allowing dissolution of attachments by giving bond to pay the value of the attached property, applies to all attachments by trustee process.

CONTRACT. Writ in the Municipal Court of the City of Boston dated January 9, 1934.

Following removal to the Superior Court and trial, this court, in a decision reported in 289 Mass. 585, ordered the defendant's exceptions dismissed and judgment entered on a verdict for the plaintiff. Proceedings after rescript are described in the opinion. The motions of the plaintiff and the trustee were disposed of by *Gray,* J. The plaintiff alleged exceptions.

*C. A. Warren,* (*N. R. Voorhis* with him,) for the plaintiff.
*I. J. Silverman,* (*M. Krook* with him,) for the trustee.

QUA, J. After the rescript in this case ordering judgment to be entered for the plaintiff on the verdict (*Arlington Trust Co.* v. *Le Vine,* 289 Mass. 585), the plaintiff filed a motion to charge the United States Trust Company, which had been previously summoned in as trustee of the defendant by special precept issued by the court (G. L. [Ter. Ed.] c. 223, § 85), and the alleged trustee filed a motion for its discharge. At the hearing on these motions it appeared

from the alleged trustee's amended answer that when the special precept was issued it had funds in its hands belonging to the defendant, and it also appeared that since that time the defendant had filed a bond to dissolve the attachment by trustee process which complied in all respects with the requirements of G. L. (Ter. Ed.) c. 223, § 125. The trial judge denied the plaintiff's motion to charge the trustee and allowed the trustee's motion for its discharge. The only question before us is whether an attachment of "credits" by trustee process can be dissolved by filing a bond to pay the value of the property released under G. L. (Ter. Ed.) c. 223, § 125.

If we except special instances limited to perishable property and to property held in common (see Rev. Sts. c. 90, §§ 62, 74), the first general enactment providing for the dissolution of attachments by giving bond appears as § 20 in the insolvency law of 1838 (St. 1838, c. 163). This section begins as follows: "Any person, whose goods or estate shall be attached on mesne process in any civil action, may, at any time before final judgment therein, dissolve such attachment, by giving bond with sufficient sureties . . . ." The bond was to be conditioned to pay the plaintiff the amount which he should recover in the action. The section is broad enough in its terms to include attachments made by trustee process. There has been no change in this statute important to the questions here raised. It is now G. L. (Ter. Ed.) c. 223, § 120. Plainly it applies to all attachments by trustee process as well as to other forms of attachments. This court in effect said so in *Atwood* v. *West Roxbury Co-operative Bank*, 156 Mass. 166, at a time when the section was incorporated in Pub. Sts. c. 161, § 122. It said so again in *Britton* v. *Goodman*, 235 Mass. 471, 474, when the section was incorporated in R. L. c. 167, § 116. See also *Mosher* v. *Murphy*, 121 Mass. 276.

While this statute was in force and applicable to trustee process, the Legislature passed another statute, St. 1867, c. 137, entitled "An Act Relating to Dissolving Attachments in Civil Suits." This was the beginning of the present G. L. (Ter. Ed.) c. 223, § 125, which is the statute

primarily involved in this case. The purpose of the new act was to provide a method by which specific property could be released from attachment by giving bond conditioned to pay the value of the property released without binding the obligors, as under the earlier act, to pay the full amount of any judgment which might be recovered. In drafting the later act, the Legislature had in mind the earlier one, then embodied in Gen. Sts. c. 123, §§ 104–106. This is shown by the fact that in § 2 of the later act they incorporated the earlier one by reference as controlling the application to the master in chancery for approval of the bond, the notice of the hearing and the fees of the master. It would be reasonable to expect that the Legislature would extend the benefit of the new method of dissolving attachments as widely as the former method extended, unless otherwise indicated or unless it was impossible or impracticable to do so. Section 1 of the later act begins as follows: "In any action when an attachment of real or personal property, or both, is made on mesne process, the defendant therein instead of dissolving such attachment in the manner now provided by law, may . . . ." There is no mention or exclusion of attachments by trustee process, and an attachment by trustee process was an attachment of personal property on mesne process. Gen. Sts. c. 142, § 21, now G. L. (Ter. Ed.) c. 246, § 20, provided that the goods, effects or credits in the hands of the trustee "shall be thereby attached and held to respond the final judgment in the suit, in like manner as goods or estate when attached by the ordinary process, except as hereinafter provided." It has always been the theory of our trustee process that, after service of the writ upon him, the trustee is holding the defendant's property, whether it be tangible property or "credits," under attachment for the benefit of the plaintiff. G. L. (Ter. Ed.) c. 246, § 20. Prov. St. 1708–9, c. 7. St. 1794, c. 65. *Burlingame* v. *Bell*, 16 Mass. 318. *Bissell* v. *Strong*, 9 Pick. 562. *Brown* v. *Floersheim Mercantile Co.* 206 Mass. 373, 376. No scire facias may be taken out until after the officer has demanded from the trustee in satisfaction of the execution the goods, effects or credits which

he is supposed to be holding in his hands.  G. L. (Ter. Ed.) c. 246, §§ 40–43, 45, 57, 64.

The act of 1867 was redrafted by St. 1870, c. 291, § 2, and the wording was changed by adopting as far as possible the exact words of Gen. Sts. c. 123, § 104, so that the two sections, one providing for the dissolution of attachments by giving a bond to pay the amount of the judgment and the other providing for the dissolution of attachments by giving a bond for the value of the property released, were worded alike as to the part which defined the attachments to which they should apply.  In subsequent revisions the wording was altered to avoid repetition, but the sections were so phrased and so arranged with respect to each other as to indicate that no change of meaning was intended material to the question here involved.  Pub. Sts. c. 161, §§ 122, 126.  R. L. c. 167, §§ 116, 121.  G. L. c. 223, §§ 120, 125.  As shown above, the earlier act applied to attachments by trustee process.  If the argument stopped at this point, it would be impossible to avoid the conclusion that the later act also so applied.

But the plaintiff relies principally upon the contention that the machinery provided by the act of 1867 and subsequent amendments thereto (now G. L. [Ter. Ed.] c. 223, § 125) for ascertaining the value of the property to be released is so ill adapted for use in connection with trustee process, at least where the attachment is of "credits" and not of tangible property, as to show that the Legislature could not have intended to include attachments of that kind.  A defendant is required to apply for approval of the sureties in the county where the property is situated, to state the name of the officer who made the attachment and a description of the property to be released.  After notice to the plaintiff and a hearing, the magistrate is to appoint three disinterested persons to examine the property and to appraise it at its fair market value.  It is argued that although this procedure can be followed readily enough with respect to tangible property, it is cumbersome and difficult when the attempt is made to apply it to an attachment of credits by trustee process; that the property is not situ-

ated in any county; that there is no occasion to state the name of an officer who has no property in his hands; that the appraisers cannot examine the property, and if the trustee has not answered, have no means of ascertaining its value; that if the defendant can give bond in such cases, he can deprive the plaintiff of his opportunity to interrogate the trustee (G. L. [Ter. Ed.] c. 246, § 12) and to have a judicial determination of the amount due from the trustee to the defendant; and that the whole procedure opens the way for collusion between the defendant and the trustee to defeat the plaintiff.

These arguments are impressive. They do not, however, go quite far enough to show that § 125 cannot be applied in cases of attachments of credits by trustee process. A debt, for the purpose of collecting it, whether by action by the creditor against the debtor or by means of trustee process, is situated where the debtor is amenable to suit, which, with reference to a case of this kind, means of course the county where the action is pending. *Rothschild* v. *Knight,* 176 Mass. 48, 54; affirmed, 184 U. S. 334. *Biggert* v. *Straub,* 193 Mass. 77, 79. *Bayer* v. *Lovelace,* 204 Mass. 327. The name of the officer is also required to be given where the attachment is of real estate, although the officer has no possession of the land. It is not impossible to describe credits or for appraisers to examine by inquiry into their value, and it is conceivable that if appraisers could discover nothing upon which to base a finding of value, they might so report to the magistrate and that, no value having been fixed, no bond could be given. The magistrate is bound by the appraisal. *Hawkins* v. *Farley,* 191 Mass. 236. As to alleged unfairness to plaintiffs, it must be remembered that the plaintiff is always bound by the answer and statements of the trustee on oath, G. L. (Ter. Ed.) c. 246, § 16, although he has a right of action for a wilful falsehood. G. L. (Ter. Ed.) c. 246, § 19. There is always a possibility of collusion.

Another difficulty with the plaintiff's contention is that its arguments have little force except where "credits" in the trustee's hands are the subject of the attachment. Where the trustee writ holds "goods" or "effects," all pro-

visions of the statute are almost as readily applicable as they are to attachments of tangible property on ordinary writs of summons and attachment. Presumably the defendant knows or can find out where his property is. It seems unlikely that the Legislature could have intended the statute to apply to attachments by trustee process when "goods" or "effects" are held, but not when "credits" are held.

No complications arise, as the plaintiff seems to contend, in cases where the trustee holds tangible property of the defendant outside the Commonwealth, for such property outside the jurisdiction is not affected by a trustee writ served here. *Van Camp Hardware & Iron Co.* v. *Plimpton*, 174 Mass. 208, 211. *Cox* v. *Central Vermont Railroad*, 187 Mass. 596, 609. Am. Law Inst. Restatement: Conflict of Laws, § 107.

The fact that when the Legislature provided for dissolution of an attachment by trustee process by a claimant giving bond (G. L. [Ter. Ed.] c. 246, § 66), it adopted a plan different from that contained in either of the two existing statutes seems to us of slight weight in deciding the issue here involved.

The foregoing discussion shows that there have existed for many years side by side and closely interrelated two statutory methods by which defendants could dissolve attachments, now represented respectively by G. L. (Ter. Ed.) c. 223, § 120, and G. L. (Ter. Ed.) c. 223, § 125. Both sections are broad enough in their descriptive wording to include all attachments by trustee process. Section 120 has been held to include such attachments. The only reason why § 125 should not also include them is because some of the procedure provided therein, though well adapted to other forms of attachment, may seem awkward as applied to some actions by trustee process, but reasonably well adapted to others, and capable of application to all. In our opinion, to say that § 125 does not apply to attachments by trustee process both of goods and effects and of credits would be to disapprove of its details as applied to one type of case rather than to construe the language which defines its scope.

*Exceptions overruled.*